# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SHAHID SHEIKH,

    Plaintiff

    v.

DISTRICT OF COLUMBIA, *et al.*,

    Defendants

Civil Action No. 14-316 (CKK)

## MEMORANDUM OPINION
(January 5, 2015)

This action arises from injuries that Plaintiff Shahid Sheikh suffered at the hands of individuals who are not parties to this action in a public space near several Alcohol Beverage Control ("ABC") licensees in the District of Columbia. Plaintiff brought this action against several defendants in this Court: the District of Columbia; Metropolitan Police Department officers Nicole Spady and Gregory Curry ("Officer Defendants"); and three Alcohol Beverage Control licensed establishments ("ABC Establishment Defendants"), YFE, Inc. (operating 18th Street Lounge), HAK LLC (operating Midtown Lounge), and Inner Circle 1223, LLC (operating Dirty Martini Inn Bar).[1] Essentially, Plaintiff alleges that Officer Spady and Officer Curry failed to prevent Plaintiff from being injured by third parties and asserts that the District of Columbia and the ABC Establishment Defendants are liable as well for the injuries that resulted. Plaintiff asserts causes of action for negligence and for violations of the Fourth, Fifth, Ninth, and

---

[1] With respect to the ABC Establishment Defendants, Plaintiff's original complaint listed three unnamed defendants: "ABC Licensed Bar No. 1," "ABC Licensed Bar No. 2," and "ABC Licensed Bar No. 3." Each was identified with the address "1200 block of Connecticut Avenue NW, Washington, D.C." Plaintiff also alleged that these three establishments had arranged for a reimbursable detail of the Metropolitan Police Department the evening of the incident in question. No further identification of the bars was provided. Plaintiff later amended his complaint, with the Court's permission, to name the actual entities referenced above. Because the Amended Complaint did not deviate from the original complaint in any other respects, the Court did not require the refiling of the motions to dismiss that were pending at that time. *See* Minute Order dated June 26, 2014.

Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983.[2]

Specifically, Plaintiff asserts two section 1983 claims against the Officer Defendants (Count I,

which alleges a failure to protect Plaintiff, and Count II, which alleges a conspiracy to cover up

the failure to protect Plaintiff); a section 1983 claim against the District of Columbia (Count III);

and a negligence claim against each defendant (Count IV).

The District of Columbia, the Officer Defendants, and YFE each move to dismiss the

complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon

which relief may be granted. Presently before the Court are the District of Columbia's [4] Motion

to Dismiss, the Officer Defendants' [13] Motion to Dismiss, and YFE's [28] Motion to Dismiss

the Amended Complaint.[3] Upon consideration of the pleadings,[4] the relevant legal authorities,

---

[2] Plaintiff references 42 U.S.C. § 1988 once in the Amended Complaint. Am. Compl. at 2. But section 1988 does not provide for an independent cause of action. *McManus v. District of Columbia*, 530 F.Supp.2d 46, 76 (D.D.C. 2007) ("[T]hat statute governs the jurisdiction and procedure of federal courts with respect to civil rights claims and does not create a cause of action.").

[3] Also before the Court is Plaintiff's [8] Motion for Leave to File Sur-Reply Memorandum, which the Court grants because it finds the Sur-Reply of assistance in resolving the issues before the Court.

[4] The Court's consideration has focused on the following documents:
- Amended Complaint, ECF No. 20 ("Am. Compl.");
- Def. District of Columbia's Mot. to Dismiss, ECF No. 4 ("District of Columbia's Mot.");
- Pl. Sheikh's Opposition to the District of Columbia's Mot. to Dismiss, ECF No. 6 ("Pl.'s Opp'n to D.C.'s Mot.");
- Def. District of Columbia's Reply to Pl.'s Opp'n to Def.'s Mot. to Dismiss, ECF No. 7 ("District of Columbia's Reply");
- Pl. Shahid Sheikh's Surreply to the District of Columbia's Reply to Plaintiff's Opp'n to the District's 12(b)(6) Mot. to Dismiss, ECF No. 8 at 6 ("Pl.'s Surreply re: D.C.'s Mot.");
- Def. District of Columbia's Supplemental Memorandum of Points and Authorities in Support of its Mot. to Dismiss, ECF No. 12 ("District of Columbia's Supp. Mem.");
- Mot. to Dismiss of Defs.' Nicole Spady and Gregory Curry, ECF No. 13 ("Officer Defs.' Mot.");
- Pl. Shahid Sheikh's Opp'n to Defs.' Nicole Spady's and Gregory Curry's 12(b)(6) Mot. to Dismiss, ECF No. 14 ("Pl.'s Opp'n to Officer Defs.' Mot.");

and the record as a whole, the Court GRANTS each motion to dismiss. The Court concludes that, with respect to each defendant, the Amended Complaint fails to state a claim upon which relief may be granted. Accordingly, the Court dismisses every claim against the District of Columbia, the Officer Defendants, and YFE. In addition, for the same reasons that the Court dismisses the negligence claim against YFE, the Court *sua sponte* dismisses the claims against the two bar defendants, HAK LLC and Inner Circle 1223, LLC, that have not entered an appearance. Because there are no claims remaining, the Court DISMISSES this action in its entirety.

## I. BACKGROUND

For the purposes of these motions, the Court accepts as true the well-pleaded allegations in Plaintiff's Amended Complaint. The Court does "not accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014).

In the early morning hours of February 27, 2011, Plaintiff and his companions exited the Current Lounge in the 1200 block of Connecticut Avenue, N.W., in Washington, D.C. Am. Compl., Prelim. Statement of Facts at 4; *see id.* ¶ 1. Upon exiting the Current Lounge, Plaintiff and a companion were confronted by and threatened by several people who had exited a nearby ABC licensed establishment. *Id.* ¶ 7. Meanwhile, three ABC licensed establishments – YFE, Inc. (operating 18th Street Lounge), HAK LLC (operating Midtown Lounge), and Inner

---

- Def.'s Nicole Spady's and Gregory Curry's Reply to Pl.'s Opp'n to Mot. to Dismiss, ECF No. 31 ("Officer Defs.' Reply")
- Def. YFE Inc.'s Mot. to Dismiss the Am. Compl., ECF No. 28 ("YFE's Mot.");
- Pl.'s Opp'n to Def. YFE's Mot. to Dismiss, ECF No. 29 ("Pl.'s Opp'n to YFE's Mot."); and
- Def. YFE, Inc's Reply in Supp. of its Mot. to Dismiss, ECF No. 30 ("YFE's Reply).

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

Circle 1223, LLC (operating Dirty Martini Inn Bar) – had arranged with the Metropolitan Police Department for a reimbursable detail, pursuant to D.C. Code § 25-798, that was ongoing at the time of these events. *Id.* ¶ 3. A reimbursable detail is "an assignment of MPD officers to patrol the surrounding area of an [ABC] establishment for the purpose of maintaining public safety, including the remediation of traffic congestion and the safety of public patrons, during their approach and departure from the establishment." D.C. Code § 25-798. Officers Spady and Curry were assigned to the reimbursable detail, serving as uniformed police officers in Plaintiff's vicinity at the time when Plaintiff exited the Current Lounge. Am. Compl. ¶ 1; *id.*, Prelim. Statement of Facts at 4. Plaintiff and his companion approached Officers Spady and Curry at their "duty station" and pointed out people lurking menacingly and asked the officers to protect Plaintiff and his companion from these assailants. *Id.* ¶ 8. Officers Spady and Curry allegedly refused Plaintiff's pleas for protection. *Id.* ¶ 10. Plaintiff was then assaulted by these would-be assailants and suffered severe permanent and painful injuries. *Id.* ¶ 11.

After the incident, on February 27, 2011, Officers Spady and Curry filed a police report without referencing any failure to intervene by the Officer Defendants. *Id.* ¶ 15; *see* District of Columbia's Supp. Mem., Ex. 1 at 1. Plaintiff made a written complaint to the Metropolitan Police Department, "pointing out the substandard conduct of Defendants Spady and Curry and their violations of his constitutional rights." Am. Compl. ¶ 16. Plaintiff does not indicate when this complaint was submitted or to whom it was submitted; nor does Plaintiff provide a copy of the complaint. *See id*. It does not appear that this complaint corresponds to any of the police reports provided by the District of Columbia or that the complaint is referenced in those reports. *See generally* District of Columbia's Supp. Mem., Ex. 1. Subsequently, Officers Spady and Curry executed a supplemental report, which did not reference any failure to intervene by the officers.

4

Am. Compl. ¶ 17. The District of Columbia has provided two reports that could match the description of the supplemental report in the Amended Complaint. The first is a "Supplement Report," dated March 1, 2011, which states that Plaintiff visited the police station to report additional facts regarding the incident. *See* District of Columbia's Supp. Mem., Ex. 1 at 10. The second is a "Supplement Report," dated March 10, 2011, which recounts the events surrounding the incident. *See id.*, Ex. 1 at 13-17. Neither of these supplement reports references any actions by police officers before or during the incident. *See id.*, Ex. 1 at 9-10, 13-17. Later, on April 3, 2013, Officer Spady testified in a criminal proceeding that she and Officer Curry had not refused Plaintiff's request to intervene and further testified that the officers had "thoroughly canvassed the zone" and "properly ruled out the presence of any person posing a risk of an imminent attack upon the Plaintiff." Am. Compl., Prelim. Statement of Facts at 7, ¶ 18. Finally, the District of Columbia did not investigate any alleged wrongdoing by Officers Spady and Curry. *Id.* ¶¶ 23, 25. Plaintiff then filed this action in this Court.[5]

## II. LEGAL STANDARD

The District of Columbia, the Officer Defendants, and YFE move to dismiss for failure to state a claim. Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint on the grounds it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*,

---

[5] The Court reserves further presentation of the facts and the procedural history for the discussion of the individual issues raised by the motions currently before the Court.

550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In deciding a Rule 12(b)(6) motion, a court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint," or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. District of Columbia Dep't of Youth Rehab. Servs.*, 768 F.Supp.2d 117, 119 (D.D.C. 2011) (citations omitted).

### III. DISCUSSION

Plaintiff brings section 1983 claims against the Officer Defendants and against the District of Columbia, as well as negligence claims against all of the defendants, including the three ABC Establishment Defendants. The Officer Defendants, the District of Columbia, and YFE each move to dismiss all claims against them for failure to state a claim pursuant to 12(b)(6). Based on the analysis below, the Court concludes that the Amended Complaint fails to state a claim upon which relief may be granted with respect to any of the defendants in this action, including those that have not appeared.

**A.  Section 1983 Claims Against the Officer Defendants**

Plaintiff brings two claims against the Officer Defendants pursuant to section 1983. First, Plaintiff claims that the Officer Defendants failed to protect Plaintiff in violation of Plaintiff's constitutional rights. *See* Am. Compl. ¶¶ 1-11. Second, Plaintiff alleges that the Officer Defendants conspired to cover up their failure to protect him in violation of his constitutional rights. *See id.* ¶¶ 12-19. The Officer Defendants move to dismiss both of these claims pursuant to Rule 12(b)(6), arguing that the complaint fails to state a claim under section 1983. In doing so,

the Officer Defendants also incorporate by reference the relevant arguments of the District of

Columbia in its motion to dismiss, specifically the argument that Plaintiff failed to set forth a

facially plausible constitutional claim. *See* Officer Defs.' Mot. at 3. The Court addresses the

Officer Defendants' arguments with respect to each section 1983 claim against them in turn.

    1.  *Failure to Protect Claim (Count I)*

Plaintiff claims that the conduct of the Officer Defendants violated his constitutional

rights. *See* Am. Compl. ¶¶ 10-11. He claims that the defendants, as a whole, violated his rights

pursuant to the Fourth, Fifth, Ninth, and Fourteenth Amendments to the United States

Constitution. *See id.* ¶ a. But he does not link the alleged conduct of the Officer Defendants to

the violation of his rights pursuant to these four amendments. *See id.* ¶¶ 1-11. The Officer

Defendants argue, as does the District of Columbia, that Plaintiff's rights have not been violated

under any of these amendments.

With respect to the Fourth, Ninth, and Fourteenth Amendments, Plaintiff does not

respond to the arguments of either the Officer Defendants or the District of Columbia. Therefore,

the Court concludes that Plaintiff has conceded that neither the Officer Defendants nor the

District of Columbia have violated Plaintiff's rights with respect to these three amendments.

Nonetheless, in the interest of completeness, a succinct analysis demonstrates that Plaintiff has

failed to state a claim with respect to these amendments. Because Plaintiff does not allege that

the Officer Defendants conducted any search or seizure of him or of his property or issued a

warrant for Plaintiff's arrest, the Amended Complaint does not adequately allege a violation of

the Fourth Amendment. *See Fernandez v. California*, 134 S. Ct. 1126, 1131-32 (2014) ("The

Fourth Amendment prohibits unreasonable searches and seizures and provides that a warrant

may not be issued without probable cause … ."). Because "the Ninth Amendment is not a source

of substantive rights, unless it is coupled with the denial of other fundamental rights," *Slaby v. Fairbridge*, 3 F.Supp.2d 22, 30 (D.D.C. 1998), Plaintiff's reference to the Ninth Amendment is superfluous. Given that the Court concludes in this section that Plaintiff has not adequately alleged the violation of his rights with respect to *any* other amendment, he has similarly not adequately alleged violation of his rights pursuant to the Ninth Amendment. Plaintiff's Fourteenth Amendment claim fails because it has long been settled that the Fourteenth Amendment does not apply to the District of Columbia.[6] *See Bolling v. Sharpe*, 347 U.S. 497, 499 (1954) *supplemented sub nom. Brown v. Bd. of Educ. of Topeka, Kan.*, 349 U.S. 294 (1955).

However, Plaintiff does respond to the defendants' arguments concerning Plaintiff's Fifth Amendment claims. The Officer Defendants argue that the Amended Complaint does not adequately allege a violation of the Fifth Amendment. Plaintiff responds that "the Complaint adequately states a plausible Fifth Amendment, substantive due process claim under the state endangerment exception to *DeShaney* [*v. Winnebago County Department of Social Services*]." Pl.'s Opp'n to D.C.'s Mot. at 8. The Court agrees with the Officer Defendants.

"As a general matter, a State's failure to protect an individual from private violence, even in the face of a known danger, 'does not constitute a violation of the Due Process Clause.' " *Butera v. District of Columbia*, 235 F.3d 637, 647 (D.C. Cir. 2001) (quoting *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989)). But "in 'certain limited circumstances[,] the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals.' " *Id.* quoting (*DeShaney*, 489 U.S. at 198). One

---

[6] While it is true that the "Equal Protection Clause of the Fourteenth Amendment applies to the District of Columbia through the Due Process Clause of the Fifth Amendment," *Dixon v. District of Columbia*, 666 F.3d 1337, 1339 (D.C. Cir. 2011), Plaintiff has not alleged any facts suggesting discrimination against him, nor does he mention equal protection even once. He has, therefore, not alleged an equal protection violation.

such set of circumstances is state endangerment.[7] *See id*. at 648. "[U]nder the State endangerment concept, an individual can assert a substantive due process right to protection by the District of Columbia from third-party violence when District of Columbia officials affirmatively act to increase or create the danger that ultimately results in the individual's harm." *Butera*, 235 F.3d at 651. Moreover, "Plaintiff must also show that the District of Columbia's conduct was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.' " *Id.* (quoting *County of Sacramento v. Lewis,* 523 U.S. 833, 847 n.8 (1998). If a plaintiff has shown that District of Columbia officials have acted to "increase or create the danger," that plaintiff can show that the official's conduct " 'shocked the conscience' by meeting the lower threshold of 'deliberate indifference.' " *Id.* at 652.

In support of his argument that the Officer Defendants' conduct qualifies for the state endangerment exception, Plaintiff relies on the fact that, while on duty pursuant to the reimbursable detail program, Officers Spady and Curry "ignored Plaintiff's pleas for protection and directed him to move away from their duty station." Am. Compl., Prelim. Statement of Facts at 6; *see* Pl.'s Opp'n to D.C.'s Mot. at 7.[8] Plaintiff argues that, "[b]y affirmatively ordering Sheikh to move away from the safety of the officers' duty station and towards the Aslamis [the assailants] and others who had gathered around the duty station while Sheikh was asking for help and were lying in wait to carry out their threatened assault, the officers affirmatively created, or

---

[7] The other primary exception "arises when the State 'takes a person into its custody and holds him there against his will,' hence depriving him of liberty." *Butera*, 235 F.3d at 648. But the exception is narrowly construed in this Circuit. *Id.* "Mere police interaction with or assistance to an individual, for example, does not necessarily amount to custody." *Id.* Plaintiff does not allege that this exception applies, and the facts presented in the Amended Complaint would not support the conclusion that Plaintiff was ever in state custody.

[8] In responding to the Officer Defendants' Motion to Dismiss, Plaintiff incorporates the arguments from his Opposition to the District of Columbia's Motion to Dismiss, *see* Pl.'s Opp'n to Officer Defs.' Mot. at 6. He does not include a separate response with respect to the failure to protect claim, pursuant to section 1983, against the Officer Defendants.

the very least increased danger to Sheikh." *Id.* at 7-8. As an initial matter, the facts necessary to support this argument are not in the Amended Complaint. Specifically, Plaintiff never alleges that Officers Spady and Curry directed him "towards the Aslamis" or that the assailants had "gathered around the duty station."[9] Plaintiff only alleges that the putative assailants "were lurking menacingly nearby," Am. Compl. ¶ 8, and that Officers Spady and Curry "ignored Plaintiff's pleas for protection and directed him to move away from their duty station," *id.*, Prelim. Statement of Facts at 6. Because Plaintiff may not amend his complaint through his Opposition, the Court addresses only those facts pleaded in the Amended Complaint. *See Middlebrooks v. Godwin Corp.*, 722 F.Supp.2d 82, 87 n.4 (D.D.C. 2010), *aff'd*, 424 Fed. App'x 10 (D.C. Cir. 2011). Based on these facts, Plaintiff cannot satisfy the requirements stated in *Butera*. Given that the would-be assailants already were "lurking menacingly" before Officers Spady and Curry took any action or failed to act, Plaintiff's argument that the officers "created" the danger fails on its face. The facts alleged also do not support an inference that the officers increased the danger; as alleged, the officers merely refused to protect Plaintiff, exposing him to the risk of injury that already existed.[10]

Plaintiff's own allegations confirm this analysis. Plaintiff alleges that the Officer Defendants "ignored and refused Plaintiff's pleas for protection and otherwise exposed him to

---

[9] It is unclear what Plaintiff means by duty station. However, the Court notes that, if Plaintiff is attempting to suggest that the Officers operated anything like a fixed post, this appears to contradict the description of the reimbursable detail program that Plaintiff presented to the Court. *See* Pl.'s Opp'n to D.C.'s Mot. at 33, ABC Reimbursable Detail Post Order ("Members shall proactively patrol on foot their designated areas and take police action as needed."; "No member shall stand immediately outside the doors of an establishment or patrol the interior of the establishment.").

[10] Even if the Court considered the unalleged facts that Plaintiff references in his Opposition, the Court would arrive at the same conclusion – that Plaintiff has not stated a state endangerment claim. For the reasons stated below, if the would-be assailants were surrounding the duty station, and the officers directed Plaintiff towards them, the Court would not conclude that the facts plausibly show that the officers had created or increased the danger to Plaintiff.

risk of injury from the imminent harm near their duty station." Am. Compl. ¶ 10. While Plaintiff

cloaks this section 1983 claim in the language of "state endangerment," the claim, as alleged,

amounts to no more than the claim that, by refusing to act, the Officers "exposed him" to the risk

of injury – in other words, that they exposed him to a risk that *already existed* through no action

of the officers. If these circumstances were enough to constitute state endangerment, the set of

"certain limited circumstances" in which "the Constitution imposes upon the State affirmative

duties of care and protection with respect to particular individuals" would swallow the general

rule that "a State's failure to protect an individual from private violence, even in the face of a

known danger, 'does not constitute a violation of the Due Process clause.' " *Butera*, 235 F.3d at

647, 648 (citation omitted). The circumstances here do not qualify for the state endangerment

exception.

Because it is necessary to satisfy *both* prongs of the test laid out in *Butera* in order to

state a state endangerment claim, *see* 235 F.3d at 651, the conclusion that the officers neither

created nor increased the danger to Plaintiff is enough to find that Plaintiff has failed to state a

plausible state endangerment claim. In any event, the Amended Complaint also does not satisfy

the second prong of the test: the facts Plaintiff alleges do not plausibly satisfy "the lower

threshold of deliberate indifference." *Id.* at 652 (quotation marks omitted). Refusing to protect

Plaintiff and directing him to move away from the "duty station" is not enough to show that

Officers Spady and Curry were deliberately indifferent to his plight. Indeed, this is not a case like

*Butera*, where the "State [was] in a position where 'actual deliberation [was] practical' " because

of the advance planning necessarily involved in the State's actions in that case. *Id.* (*quoting*

*Sacramento*, 523 U.S. at 851). Here, the Officers made an on-the-spot decision in the midst of

their patrolling the area outside of several lounges and bars, telling Plaintiff to move away from

the location where they were standing. This decision does not suggest any advance planning by the officers. This is not a circumstance where police conduct shows deliberate indifference to state-created dangers.

Accordingly, the Court concludes that the Amended Complaint does not state a section 1983 claim with respect to the failure of the officers to protect Plaintiff, and the Court dismisses Count I.

### 2. *Conspiracy Claim (Count II)*

Plaintiff claims that the Officer Defendants wrongfully conspired to cover up their failure to protect Plaintiff. *See* Am. Compl. ¶ 15. Plaintiff claims that this conspiracy unfolded in three stages: (1) Officers Spady and Curry filed an initial police report regarding the evening incident that omitted any reference to the officers' wrongdoing, *id.* ¶ 15; (2) the officers filed a supplemental police report "in which they persisted in concealing and covering-up their wrongdoing, *id.* ¶ 17; and (3) Officer Spady gave false testimony in a criminal proceeding in denying that the officers committed the alleged wrongful acts the evening of the incident, *id.* ¶ 18.[11] The Officer Defendants argue that, first, Plaintiff has not alleged the elements of a conspiracy violating his constitutional rights and, second, the conspiracy claim is barred by the intracorporate conspiracy doctrine. The Court agrees with the Officer Defendants that Plaintiff has not alleged facts stating the elements of a conspiracy, and the Court concludes that it need not reach the question of the intracorporate conspiracy doctrine's applicability.

The Officer Defendants argue that Plaintiff has failed to state a claim for conspiracy. "[T]he two essential elements of civil conspiracy are (1) 'an agreement to take part in an

---

[11] Plaintiff does not claim that the Officer Defendants conspired to fail to protect him. *See* Am. Compl. ¶¶ 12-19.

unlawful action or a lawful action in an unlawful manner'; and (2) 'an overt tortious act in furtherance of the agreement that causes injury.' " *Hall v. Clinton*, 285 F.3d 74, 82-83 (D.C. Cir. 2002) (quoting *Halberstam v. Welch*, 705 F.2d 472, 479 (D.C. Cir. 1983)). Plaintiff alleges no facts that support an inference that Officers Spady and Curry agreed to the alleged cover-up. Plaintiff does not allege anything with respect to the supposed agreement beyond the conclusory statement that the Officer Defendants "conspired" to cover up their wrongdoing. Moreover, while Plaintiff is correct that "[p]roof of a tacit, as opposed to explicit, understanding is sufficient to show agreement," *Halberstam*, 705 F.2d at 477, the filing of the two police reports and the testimony of Officer Spady, without more, are insufficient to show even a tacit agreement. *Contrast id.* at 487 ("The long-running nature of the scheme is also crucial to the inference of agreement—[the party's] knowledge and aid over five years makes some kind of accord extremely likely").Without such an agreement—explicit or tacit—there can be no conspiracy.

Because the Court concludes that the Amended Complaint fails to state a claim for conspiracy in the first instance, the Court need not decide whether the intracorporate conspiracy doctrine bars this section 1983 claim as well. *Cf. Kelley v. District of Columbia*, 893 F.Supp.2d 115, 119-20 (D.D.C. 2012) (noting that the D.C. Circuit has not has not ruled on the applicability of this doctrine to the civil rights context, but concluding that the doctrine applies with respect to a section 1985 claim on the basis of case law from other Circuits and the decisions of District courts within this Circuit).

Lastly, the Court addresses a more basic reason why the conspiracy claim fails. A conspiracy to cover up wrongdoing is necessarily dependent on wrongdoing having occurred. Otherwise, there is nothing to cover up. To state a claim for conspiracy to cover up wrongdoing, Plaintiff must allege sufficient facts to allow a reasonable inference that such wrongdoing

occurred. The Court concludes in the immediately previous section of this opinion that Plaintiff

has not alleged facts sufficient to state a claim pursuant to section 1983. Moreover, the Court

determines, below, that the Amended Complaint fails to state a claim for negligence. Therefore,

Plaintiff cannot, as a matter of logic, state a claim that the officers have conspired to cover up

any underlying wrongdoing.

Accordingly, the Court concludes that the Amended Complaint does not state a section

1983 conspiracy claim against the Officer Defendants, and the Court dismisses Count II.

## B.  Section 1983 Claim Against the District of Columbia (Count III)

Plaintiff claims that the District of Columbia violated his constitutional rights through the

actions of its officers and agents, principally Officers Spady and Curry. Plaintiff claims that the

District of Columbia is liable for the Officer Defendants' failure to protect Plaintiff while they

were serving on the reimbursable detail, Am. Compl. ¶ 22, and for the Officer Defendants'

conspiracy to cover up their failure to protect Plaintiff, *id.* ¶ 23.[12] "[I]n considering whether a

plaintiff has stated a claim for municipal liability, the district court must conduct a two-step

inquiry. First, the court must determine whether the complaint states a claim for a predicate

constitutional violation. Second, if so, then the court must determine whether the complaint

states a claim that a custom or policy of the municipality caused the violation." *Baker v. District

of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003). The District of Columbia argues that

Plaintiff's complaint fails at both steps, and the Court agrees.

---

[12] Plaintiff does not claim a section 1983 violation by virtue of the failure of officials *other than*
the Officer Defendants to investigate the alleged police misconduct at question here. *See* Pl.'s
Opp'n to D.C.'s Mot. at 8-9 (quoting Am. Compl. ¶ 23). Instead, Plaintiff references the failure
to investigate the conduct of the Officer Defendants in order to establish the "policy" or
"custom" of the District of Columbia necessary to state a 1983 claim against the District of
Columbia. *See id*.

First, with respect to "whether the complaint states a claim for a predicate constitutional violation," the Court's conclusions regarding the section 1983 claims against the Officer Defendants resolve this question in the negative. As discussed above, the Court concludes that the Amended Complaint fails to state a 1983 claim against the Officer Defendants for their alleged failure to protect Plaintiff and that the Amended Complaint fails to state a claim with respect to an alleged conspiracy between the Officer Defendants to cover up the underlying wrongdoing. Because the complaint does not state a claim for a "predicate constitutional violation," the District of Columbia cannot be liable for these claims.

Second, the Court concludes that Plaintiff has not adequately alleged a policy or custom that is necessary under *Monell v. Department of Social Services.*, 436 U.S. 658, 694 (1978), to state a section 1983 claim against the District of Columbia – even if there were a predicate constitutional violation. "The court must determine whether the plaintiff has alleged an 'affirmative link,' such that a municipal policy was the 'moving force' behind the constitutional violation.' " *Baker*, 326 F.3d at 1306 (citations omitted). "There are a number of ways in which a 'policy' can be set by a municipality to cause it to be liable under § 1983: the explicit setting of a policy by the government that violates the Constitution; the action of a policy maker within the government; the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become 'custom'; or the failure of the government to respond to a need (for example, training of employees) in such a manner as to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violations." *Id.* at 1306-07 (citations omitted).

Plaintiff has alleged no facts reflecting such a policy. The essence of Plaintiff's allegation is that the Metropolitan Police Department "engaged in a 'custom, policy or practice of

condoning the violation of citizens [*sic*] constitutional rights by police officers,' including condonation of (a) the failure of police officers 'to intervene and protect citizens with[in] the zone of a reimbursable detail,' (b) material[] omissions in police reports and public records which falsely portrayed the facts of a criminal incident' and (c) the giving of 'false testimony by police officers.' " Pl.'s Surreply at 2 (quoting Am. Compl.). This reference to a "custom, policy or practice of condoning" the violation of constitutional rights is no more than a conclusory recital of the elements of a claim pursuant to *Monell*, together with the alleged predicate constitutional violations. Similarly, the allegation that the District of Columbia failed to investigate the alleged misconduct of Officers Spady and Curry is insufficient. The District of Columbia's failure to investigate the conduct of the Officer Defendants – the single instance of a failure to investigate presented – does not allow a reasonable inference of a pattern of actions "so consistent that they have become 'custom.' " *Baker*, 326 F.3d at 1306. Moreover, the failure to investigate the specific incidents that are central to this action only occurred *after* the incidents themselves. Therefore, by definition, the failure to investigate cannot itself constitute a policy that "was the 'moving force' behind the constitutional violation," *id.*, as it must in order to satisfy the requirements for municipal liability. *See id.*

Because the Amended Complaint fails to allege sufficient facts both regarding a predicate constitutional violation and tracing such a violation to a policy or custom of the District of Columbia, the Amended Complaint fails to state a section 1983 claim against the District of Columbia. Accordingly, the Court dismisses Count III of the Amended Complaint.

## C.  Negligence Claims (Count IV)

Plaintiff alleges negligence by all of the defendants: Officers Spady and Curry, the three ABC licensed establishments that arranged for the reimbursable detail that is the subject of this

16

action, and the District of Columbia. The Court concludes that the Amended Complaint does not

state a claim upon which relief may be granted with respect to the negligence claims against any

of the defendants, and the Court dismisses Count IV.

1. *Negligence Claims Against the Officer Defendants*

Plaintiff claims that the Officer Defendants acted negligently when they refused to

intervene to protect him – after he both reported to them the threats he had received and

requested their assistance. Specifically, Plaintiff claims that, in failing to protect him, the Officer

Defendants breached the duty they owed to him as a result of the statute and the orders

establishing the reimbursable detail program.[13] Am. Compl. ¶¶ 32-33. The Officer Defendants

"incorporate … by reference all arguments set forth in the District's motion that apply to

Defendants Spady and Curry."[14] Officer Defs.' Mot. at 3. These arguments include the Officer

Defendants' arguments that the negligence claim against them fails (1) because Plaintiff failed to

give notice of his negligence claim to the District as required by D.C. Code § 12-309,

(2) because the public duty doctrine bars liability in these circumstances, and (3) because

Plaintiff only alleges intentional conduct as the basis for the negligence claim. The Court

---

[13] Plaintiff also alleged injury and proximate causation. The Court need not discuss those elements of a negligence claim because the Court concludes that the Officer Defendants did not breach any duty in the first instance.

[14] Although the Officer Defendants only referenced certain of the District of Columbia's individual arguments explicitly, the Court concludes that the Officer Defendants' general statement that they are incorporating by reference "all arguments … that apply to Defendants Spady and Curry" is sufficient to avoid forfeiting those arguments that are, indeed, relevant. In particular, because Plaintiff responded to the District of Columbia's arguments in the briefing with respect to that defendant, Plaintiff was on notice that all of those arguments are before the Court. *See* Pl.'s Opp'n to Officer Defs.' Mot. at 6 ("To the extent that Defendants Spady and Curry join in the District of Columbia's Motion to Dismiss and incorporate by reference the arguments in the District's Motion … Plaintiff Shahid Sheikh likewise incorporates by reference all arguments set forth in his Opposition to the District's Motion to Dismiss that apply to Officers Spady and Curry.")

concludes that the public duty doctrine bars the negligence claim against the Officer Defendants. The Court also concludes that the statutory notice requirement of section 12-309 applies only to the District of Columbia and not to the individual police officers. The Court finds it unnecessary to reach the argument as to the intentional nature of the acts alleged.

As a preliminary matter, because the Court dismisses the federal question claims in this action, it must assure itself that it has subject matter jurisdiction over the negligence claim against the Officer Defendants before proceeding to the parties' arguments with respect to the claim itself. *See Wagner v. Fed. Election Comm'n,* 717 F.3d 1007, 1010 (D.C. Cir. 2013); *accord Fogo De Chao (Holdings) Inc. v. U.S. Dep't of Homeland Sec.*, 769 F.3d 1127, 1138 (D.C. Cir. 2014). Plaintiff has alleged sufficient facts to support the Court's exercise of diversity jurisdiction, pursuant to 28 U.S.C. § 1332, over this state law claim against the Officer Defendants. *See* Am. Compl. ¶¶ a-c (Plaintiff is a resident of Virginia, and Officer Defendants are residents of the District of Columbia). The Officer Defendants do not contest the allegations that support diversity jurisdiction or argue that there is no diversity jurisdiction over the negligence claims against them. *See generally* Officer Defs.' Mot.; Officer Defs.' Reply.

Now that the Court has assured itself that it has jurisdiction over this state law claim, the Court begins with the argument that notice is required pursuant to section 12-309 with respect to the negligence claim against the Officer Defendants because this requirement may be jurisdictional. *See Egudu v. District of Columbia*, No. 12-cv-1841 (ABJ), — F.Supp.3d —, 2014 WL 5472176, at *1 (D.D.C. Oct. 29, 2014) (assuming that the notice requirement of section 12-309 is jurisdictional); *Sperling ex rel. Estate of Oxlaj–Gonzales v. Wash. Metro. Area Transit Auth.*, 542 F.Supp.2d 76, 81 (D.D.C. 2008) (accepting parties' agreement that section 12-309 is jurisdictional); *cf. Jaiyeola v. District of Columbia*, 40 A.3d 356, 362 n.14 (D.C. 2012) (declining

to decide whether section 12-309 is jurisdictional). However, insofar as the Officer Defendants' make this argument, this argument fails at the outset because "§ 12-309 only applies to an 'action … against the District of Columbia.' " *Mpoy v. Fenty*, 870 F.Supp.2d 173, 181 (D.D.C. 2012). This statutory provision does not bar claims asserted against District officials in their individual capacities. *See id*. Accordingly, section 12-309 does not bar Plaintiff's negligence claim against the Officer Defendants.[15]

Next the Court addresses the argument that the public duty doctrine bars liability against the Officer Defendants. "The public duty doctrine 'operates to shield the District and its employees from liability arising out of their actions in the course of providing public services.' " *Allen v. District of Columbia*, 100 A.3d 63, 67 (D.C. 2014) (quoting *Hines v. District of Columbia*, 580 A.2d 133, 136 (D.C. 1990)). If "facts alleged … do not suffice to establish that District employees created a special relationship with [Plaintiff] permitting imposition of negligence liability," the Court must dismiss the suit. *Woods v. District of Columbia*, 63 A.3d 551, 558 (D.C. 2013).

First, Plaintiff argues that the public duty doctrine does not apply because the Officer Defendants "made [his] condition worse than it would have been had the [officers] failed to show up at all or done nothing after their arrival." *Johnson*, 580 A.2d at 142. The Court already concluded, in discussing Plaintiff's section 1983 state endangerment claim above, that the

---

[15] Although Plaintiff does not explicitly state that he is suing Officers Spady and Curry in their individual capacities, the Court infers from the Amended Complaint that he is doing so given that he also seeks relief from the District of Columbia. In any event, insofar as Plaintiff is suing the Officer Defendants in their official capacities, the suit would be "treated as [a] suit[] against the government itself." *Herrion v. Children's Hosp. Nat. Med. Ctr.*, 786 F.Supp.2d 359, 367 (D.D.C.) *aff'd*, 448 F. App'x 71 (D.C. Cir. 2011). Were that the case, the claims against the officers would be resolved just as the claims against the District of Columbia are resolved. Given that the Court dismisses all claims against the District of Columbia, any claims against the officers in their official capacities would be dismissed for the same reasons.

Amended Complaint does not allow an inference that the officers created or increased the danger to Plaintiff. For the same reasons, the Court concludes that Plaintiff has not alleged facts that suggest that the presence of the Officer Defendants made Plaintiff's condition worse. Plaintiff's sole argument with regard to that claim is that the officers directed him away from their duty station towards the would-be assailants. As discussed with respect to the state endangerment claim above, the Amended Complaint *does not* allege that the officers directed Plaintiff *towards* the would-be assailants or that the would-be assailants were surrounding the duty station; it only alleges that the Officer Defendants directed him *away* from the duty station. *See supra* note 10 and surrounding text. But even if the Officer Defendants had directed Plaintiff towards the would-be assailants, that would not be enough to satisfy this exception to the public duty doctrine. Plaintiff alleges that he emerged from an ABC establishment fearing an attack from the nearby would-be assailants and then sought assistance from Officers Spady and Curry. Am Compl. ¶¶ 6-8. There is no indication that, if the officers had not been on the scene, Plaintiff would have faced a lesser risk than he did in these circumstances.

Second, Plaintiff argues that the public duty doctrine does not apply here because Plaintiff was in a class of people to whom the Officer Defendants owed a special duty. This argument fails as well. The statutory provision establishing the reimbursable detail program defines a reimbursable detail as "an assignment of MPD officers to patrol the surrounding area of an establishment for the *purpose of maintaining public safety*, including the remediation of traffic congestion and the safety of public patrons, during their approach and departure from the establishment." D.C. Code § 25-798. The main purpose of a reimbursable detail is "maintaining public safety," and the "safety of public patrons" is simply a single element "includ[ed]" in the multiple components of public safety. *Id*. Contrary to Plaintiff's contention that this statute

establishes a special duty to patrons, the statute merely includes patrons in the class of people

that the officers are bound to protect: the general public. Moreover, the Metropolitan Police

Department ABC Establishment Reimbursable Program Agreement, which Plaintiff presented to

the Court, explicitly acknowledges that a police officer may "make[] an arrest **unrelated** to the

ABC establishment." Pl.'s Opp'n to D.C.'s Mot., Ex. 1 at 21 (emphasis in original). The fact that

officers on a reimbursable detail may make *unrelated* arrests confirms that such officers owe

duties to the general public, not merely to patrons of ABC establishments. Similarly, the ABC

Reimbursable Detail Post Order, also provided by Plaintiff, confirms the public purpose of the

program: "The purpose of a reimbursable detail is to ensure PUBLIC SAFETY for the

immediate area of where the ABC establishment is located and to preserve the peace and quiet of

the neighborhood." *Id.*, Ex. 1, at 23. Insofar as the statute includes the protection of patrons in

the definition of a reimbursable detail, that reference only serves to reiterate that patrons are

included among the members of the general public, whom the patrolling officers are charged

with protecting.[16] The statute does not establish duties to a specific category of patrons that

exceed the duties to the members of the general public.[17]

---

[16] Moreover, even if it were true that the officers on a reimbursable duty had a special duty to the patrons of "the establishment," D.C. Code § 25-798(a)(3), the only possible reading of the statute in that vein would be that the officers owed a special duty to the patrons of the *specific* establishments that had arranged for the reimbursable detail. But here Plaintiff was a patron of an establishment that had *not* arranged for the reimbursable detail in question: he exited from the Current Lounge before the attack, *see* Am. Compl., Prelim. Statement of Facts at 4, and the Current Lounge is not one of the ABC Establishment Defendants in this case. Reading the statute to mean that the officers owed a special duty to patrons of *any* ABC licensed establishment, regardless of whether that establishment arranged for the detail, is simply implausible.

[17] None of the cases to which Plaintiff cites are to the contrary. Indeed, some of these cases stand for propositions that negate Plaintiff's arguments. *See, e.g.*, *Johnson*, 580 A.2d at 141 (public duty doctrine applies notwithstanding District of Columbia charging a user fee for ambulance service).

Because the Court concludes that Plaintiff has not alleged sufficient facts to survive the bar to liability established by the public duty doctrine, the Court need not reach the argument that, absent that doctrine, the Amended Complaint would fail to state a negligence claim because it relies on intentional acts by Officers Spady and Curry. Accordingly, the Court dismisses the negligence claim against the Officer Defendants.

   2.   *Negligence Claims Against the ABC Establishment Defendants*

Plaintiff claims that, because the ABC Establishment Defendants controlled the officers jointly with the District of Columbia, the ABC Establishment Defendants are vicariously liable for the Officer Defendants' negligence in failing to prevent his injuries. Am. Compl. ¶¶ 28-29. The sole ABC Establishment Defendant to enter an appearance, YFE, Inc., argues that Plaintiff has failed to state a negligence claim against YFE because, first, the action is barred by the three-year statute of limitations and, second, there is no plausible basis to find that YFE controlled the actions of the Officer Defendants. Because there is no plausible basis to conclude that YFE controlled the actions of Officers Spady and Curry, the Court does not address the statute of limitations argument.[18] After assuring itself that it has jurisdiction over these negligence claims, the Court addresses YFE's arguments as they pertain to YFE and then addresses them as they apply to the two ABC Establishment Defendants that have not appeared in this action, Inner Circle 1223, LLC, and HAK LLC.

---

[18] With respect to the statute of limitations, YFE specifically argues that the Amended Complaint, which identifies the ABC Establishment Defendants by name, does not relate back to the filing of the original complaint, which only identifies the ABC Establishment Defendants generically. *See* Fed. R. Civ. P. 15(c). The Court merely notes that "the question of relation back in the context of previously unknown defendants is a complex one that our Circuit has not addressed, but which other courts are sharply divided on." *Hartley v. Wilfert*, 931 F.Supp.2d 230, 234 (D.D.C. 2013). Because the Court dismisses this claim on other grounds, it need not address the divided case law here.

The Court must assure itself – as it did with respect to the negligence claim against the Officer Defendants – that it has subject matter jurisdiction over the negligence claims against the ABC Establishment Defendants before proceeding to the parties' arguments. *See Wagner,* 717 F.3d at 1010. Plaintiff has alleged sufficient facts to support the Court's exercise of diversity jurisdiction, pursuant to 28 U.S.C § 1332, over these state law claims against the ABC Establishment Defendants. *See* Am. Compl. ¶¶ a, e, g (Plaintiff is a resident of Virginia, and the ABC Establishment Defendants are organized under the laws of the District of Columbia with their principal places of business in the District of Columbia). YFE does not contest the allegations that support diversity jurisdiction or argue that there is no diversity jurisdiction over the negligence claim against it. *See generally* YFE's Mot.; YFE's Reply. Accordingly, the Court proceeds to determine whether the Amended Complaint states a negligence claim upon which relief may be granted.

In determining whether a master-servant relationship exists, "[t]he decisive test … is whether the employer *has the right to control and direct the servant in the performance of his work and the manner in which the work is to be done.*" *Safeway Stores, Inc. v. Kelly*, 448 A.2d 856, 860 (D.C. 1982) (emphasis in original). Plaintiff has alleged no facts suggesting that YFE controlled Officers Spady and Curry. Indeed, documentation governing the reimbursable detail program, presented by Plaintiff, definitively answers that question: officers on a reimbursable detail are not controlled by the ABC establishment that arranged for the detail. *See* Pl.'s Opp'n to D.C.'s Mot., Ex. 1 at 19 ("[I]f an ABC establishment requests a reimbursable detail, the officers work for MPD on public space, and not for or in an ABC establishment."). Moreover, Plaintiff's attempt to depict the officers on a reimbursable detail as security guards, *see* Pl.'s Opp'n to YFE's Mot. at 10, is flatly contradicted by the rules governing the program, as well. *See id.*, Ex.

1 at 21 ("Officers shall not: [1.] Work inside an establishment, unless police action is required inside the establishment. [2.] Remain stationary at the door of an establishment.") Neither the Amended Complaint nor any plausible amendment of that complaint states a negligence claim against YFE. Therefore, the Court dismisses the negligence claims against YFE.

Next, the Court turns to the two ABC Establishment Defendants that have not entered an appearance, Inner Circle 1223, LLC, and HAK LLC. There is no reason to distinguish between these defendants and YFE. As the discussion above indicates with respect to YFE, there is no basis to establish liability of an ABC establishment over the police officers serving in a reimbursable detail that the establishment arranged. "The district court may *sua sponte* dismiss a claim pursuant to Rule 12(b)(6) without notice where it is 'patently obvious' that the plaintiff cannot possibly prevail based on the facts alleged in the complaint." *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 127 (D.C. Cir. 2012) (citing *Baker v. Dir., U.S. Parole Comm'n,* 916 F.2d 725, 727 (D.C. Cir. 1990)). Because Plaintiff responded to YFE's arguments with respect to dismissal, Plaintiff was on notice of the potential bases for dismissal of these defendants. Therefore, it is not necessary to satisfy the "patently obvious" standard stated in *Wackenhut* in order to dismiss the negligence claims against the absent defendants on the basis of the arguments presented by YFE. But in any event, for the reasons stated above, it is "patently obvious" that Plaintiff cannot prevail against HAK LLC or against Inner Circle 1223, LLC.[19] Accordingly, the Court *sua sponte* dismisses the negligence claims against HAK LLC and Inner Circle 1223, LLC.

---

[19] In addition, even though the Court suggested in a previous order that Inner Circle 1223, LLC, had been effectively served, *see* Minute Order dated July 22, 2014, it appears that this defendant may not have been effectively served. *See* Letter from National Registered Agents, Inc., dated July 7, 2014, ECF No. 23, at 1 (stating that entity was unable to receive documents on behalf of Inner Circle 1223, LLC, because of a "dead end.").

### 3. *Negligence Claim Against the District of Columbia*

Plaintiff claims that the District of Columbia is vicariously liable for the Officer Defendants' negligence in failing to prevent his injuries because the District of Columbia and the ABC Establishment Defendants jointly controlled the officers. Am. Compl. ¶¶ 28-29. The District of Columbia argues that it is not liable because, first, Plaintiff failed to provide the required notice of his negligence claim pursuant to D.C. Code § 12-309; second, Plaintiff alleges only intentional conduct in his complaint; and third, the public duty doctrine shields the District of Columbia from liability. The Court concludes that both the failure to give notice pursuant to section 12-309 and the public duty doctrine bar liability here. Therefore, the Court does not address the question whether the Amended Complaint only alleges intentional acts such that it does not state a claim for negligence.

Before proceeding to the District of Columbia's arguments for dismissal, the Court must assure itself that it has subject matter jurisdiction over the negligence claim against the District of Columbia. *See Wagner,* 717 F.3d at 1010. Unlike the other defendants in this action, there is no diversity jurisdiction over the District of Columbia. *See Long v. District of Columbia*, 820 F.2d 409, 414 (D.C. Cir. 1987) ("Irrespective of any labels, the District is not subject to the diversity jurisdiction of the federal courts."). Nor does Plaintiff contend that there is federal question jurisdiction over this state law negligence claim. *Cf.* Am. Compl. at 1 ("The jurisdiction of the Court is invoked pursuant to Title 28, U.S.C. § 1332 and the diversity of citizenship of the parties herein, and pursuant to Title 42, U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, Ninth, and Fourteenth Amendments to the Constitution of the United States of America."). When this action was filed, the Court had jurisdiction over the negligence claim against the District of Columbia through supplemental jurisdiction. *See* 28 U.S.C. § 1367 ("[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within

such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."). However, the Court has dismissed all of those claims over which it has original jurisdiction: the section 1983 claims, over which the Court has federal question jurisdiction, *see* 28 U.S.C. § 1331, and those negligence claims over which the Court has diversity jurisdiction, *see* 28 U.S.C. § 1332.

"The district courts may decline to exercise supplemental jurisdiction over a claim … if … the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). The Court first notes that Plaintiff filed this action in this forum, and the District of the Columbia does not argue that this claim should be dismissed for jurisdictional reasons. *Cf. Araya v. JPMorgan Chase Bank, N.A.*, No. 13-7036, 2014 WL 7373492, at *3 (D.C. Cir. Dec. 30, 2014) ("Ordinarily, the plaintiff is entitled to select the forum in which he wishes to proceed."). In addition, because the resolution of the negligence claim is intertwined with the other claims in this action that the Court must resolve, particularly the negligence claim against the Officer Defendants, and because the Court's conclusions do not require resolving unsettled issues of District of Columbia law, the Court resolves the negligence claim with respect to the District of Columbia, as well, in the interest of judicial efficiency. Insofar as the parties' arguments raise unsettled issues of District of Columbia law, the Court does not reach those issues. *Cf. id.* at *6 ("[W]e have repeatedly held that a district court abuses its discretion when it maintains jurisdiction over a removed case presenting unsettled issues of state law after the federal claims have been dismissed.")

Having assured itself that it is appropriate to retain supplemental jurisdiction over the negligence claim against the District of Columbia, the Court addresses first the notice claim

pursuant to section 12-309 because it *may* be jurisdictional, as discussed above.[20] *See Egudu*, —
F.Supp.3d —, 2014 WL 5472176, at *1; *cf. Jaiyeola*, 40 A.3d at 362 n.14. In contrast to the
application of this provision to the Officer Defendants, there is no dispute – among the parties or
in the case law – that this provision applies to a negligence claim against the District of
Columbia itself. *See Mpoy*, 870 F.Supp.2d at 181. However, the parties dispute who bears the
burden of proof with respect to this provision. Plaintiff argues that compliance with section 12-
309 is an affirmative defense and, therefore, the District of Columbia bears the burden of proof.
*See* Pl.'s Surreply at 3. The District of Columbia argues that Plaintiff bears the burden of proving
compliance with section 12-309. *See* District of Columbia's Reply at 7. With respect to this
question, the District of Columbia is correct. "Unless it demonstrates compliance with the
requirements of § 12-309, a plaintiff's suit against the District is properly dismissed."[21] *Snowder*

---

[20] Because the notice requirement in section 12-309 *may not* be jurisdictional, *see Jaiyeola*, 40
A.3d at 362 n.14, the Court analyzes Plaintiff's compliance with this provision through the lens
of Rule 12(b)(6) (failure to state a claim) rather than through the lens of Rule 12(b)(1) (lack of
subject matter jurisdiction).

[21] The D.C. Court of Appeals' statement in *Jaiyeola*, relied on by Plaintiff, that "[b]ecause § 12-
309 and statutes of limitations provide affirmative defenses, Civil Rule 8(c) requires them to be
'set forth affirmatively' in the answer to the complaint, and they 'may be waived if not promptly
pleaded' " is not to the contrary. *Jaiyeola*, 40 A.3d at 361. In a footnote appended to the end of
the paragraph in which this statement appears, the D.C. Court of Appeals explicitly states that
"we need not decide whether § 12-309's notice requirement is jurisdictional and therefore
unwaivable." *Id.* at 362 n.14. Understood as a whole, *Jaiyeola* stands for the proposition that the
D.C. Court of Appeals had not – and, two years later, it still has not – decided whether or not
compliance with 12-309 is waivable. Because the D.C. Court of Appeals is the final arbiter of
District of Columbia law, contrary authority from District Courts in this Circuit is immaterial. *Cf.
Maldonado v. District of Columbia*, 924 F.Supp.2d 323, 332 (D.D.C. 2013) (citing *Jaiyeola* and
other cases from this Circuit and concluding that section 12-309 is non-jurisdictional).

The Court acknowledges that *Jaiyeola*, properly understood, appears to be in tension with
*Snowder*, in which the D.C. Court of Appeals stated that a Plaintiff must "*demonstrate*
compliance with the requirements of § 12-309" to avoid dismissal. *Snowder*, 949 A.2d at 600
(emphasis added). One way to understand the cases together is as follows. Assuming that section
12-309 is not jurisdictional and is thus waivable, a defendant is *at least* required to raise this
provision as a defense and is *at most* required to make a prima facie showing that Plaintiff did
not comply with the provision. Regardless, once a defendant does so, Plaintiff bears the burden

*v. District of Columbia*, 949 A.2d 590, 600 (D.C. 2008) (quoting *District of Columbia v. Arnold & Porter,* 756 A.2d 427, 436 (D.C. 2000)). But even if Plaintiff were correct that the District of Columbia bears the burden of proof, the Court concludes that the District of Columbia has done so here.

Section 12-309 requires notice to the District of Columbia of any negligence claim against the District of Columbia as follows:

> An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage. A report in writing by the Metropolitan Police Department, in regular course of duty, is a sufficient notice under this section.

D.C. Code § 12-309. "In order for a police report made in the regular course of duty to satisfy the Section 309 requirement of notice, it must contain information as to the approximate time, place, cause and circumstances of the injury or damage ' … with at least the same degree of specificity required of a written notice.' " *Pitts v. District of Columbia*, 391 A.2d 803, 808 (D.C. 1978) (quoting *Jenkins v. District of Columbia*, 379 A.2d 1178, 1178 (D.C. 1977)). The parties agree that Plaintiff sent no direct notice to the District of Columbia but dispute whether the police reports were sufficient to satisfy the statutory requirement.

The Amended Complaint describes an initial police report and a supplemental police report that was made after a subsequent inquiry by Plaintiff. Am. Compl. ¶¶ 15, 17. While neither Plaintiff nor the District of Columbia initially provided the police report in a submission

---

of demonstrating compliance with the provision. If, to the contrary, section 12-309 is jurisdictional, the burden of showing compliance with the provision falls squarely on a plaintiff's shoulders. In any event, the D.C. Court of Appeals' statement in *Snowder* that a plaintiff must demonstrate compliance with section 12-309 to avoid dismissal leaves no room for further interpretation of that requirement by this Court. *See id.*

to the Court, the District of Columbia ultimately provided all of the various police reports

relating to the underlying incident. *See* District of Columbia's Supp. Mem., Ex. 1. Among these

reports are three reports that appear to correspond to the reports referenced in the allegations in

the Amended Complaint.[22] *See* Am. Compl ¶¶ 15, 17. Those reports describe the events in

question as follows:

- The initial "Incident-Based Report," dated February 27, 2011, describes the altercation between Plaintiff and the third-party assailants and does not include any facts suggesting negligent activities of the Officer Defendants, such as Plaintiff's reporting threats to the officers or the officers' failure to intervene. *See* District of Columbia's Supp. Mem., Ex. 1 at 1, 4.

- The "Supplement Report," dated March 1, 2011, resulted from Plaintiff visiting the police station to "make a statement of additional facts that were not stated to the reporting officer at the time the initial report was taken." *Id.*, Ex. 1 at 10. This document reports Plaintiff's statement that the third-party assailants had threatened him prior to the actual assault but *does not* state that he had conveyed this threat to the Officer Defendants or that they had failed to protect him. *See id*.

- The "Supplement Report," dated March 10, 2011, recounts the events of February 27, 2011, including the statements of Plaintiff and other complainants to the officers. This report does not state that Plaintiff reported any threats to the Officer Defendants or that they failed to intervene.[23] *See id*., Ex. 1. at 13-17.

None of these three reports state that Plaintiff or his companions had reported threats they had

received to the Officer Defendants or that the Officer Defendants had failed to intervene with

---

[22] Plaintiff references an initial report, *see* Am. Compl. ¶ 15, and a supplemental report, *see id.* ¶ 17. The District of Columbia has provided the initial report and two supplemental reports. It appears that the supplemental reports, together, correspond to the single supplement referenced in the Amended Complaint.

[23] The report states, "Complainant-1 [a companion of Plaintiff] said that one of the security guard[s] out front separated them and told them to leave." District of Columbia's Supp. Mem., Ex. 1 at 17. It is unclear whether this is an inaccurate reference to the police officers serving on the reimbursable detail or a reference to other ABC establishment security guards in the vicinity. In any event, this reference would not have led the District of Columbia to expect a negligence claim based on the failure of police officers to intervene in the altercation described in this report.

respect to the altercation. *See id.*, Ex. 1 at 1, 4, 10, 13-17. Nor do these reports otherwise suggest

any negligent behavior by the Officer Defendants. *See id.*

Indeed, with respect to the section 1983 basis for liability, Plaintiff claims that the Officer

Defendants conspired to wrongfully cover up their failure to protect him "by omitting and

concealing any reference to their failure to intervene and properly exert their police duties" from

the initial police report, Am. Compl. ¶ 15, and then in a supplemental report "persisted in

concealing and covering-up their wrongdoing and persisted in their violations of Plaintiff's

constitutional rights," *id.* ¶ 17. In other words, Plaintiff himself alleges that the police reports say

nothing about the role of the Officer Defendants in causing his injury.

Beyond the reports that appear to correspond to those that Plaintiff referenced, there are

no other police reports that would have given the District of Columbia notice of the possibility of

this civil action. The District of Columbia has provided several subsequent reports, filed between

March 10, 2011, and May 27, 2012, that track the progress of the investigation. *See id.*, Ex. 1 at

18-31. None of the subsequent reports mention the failure of the police officers to act. *See id.*

Moreover, the District of Columbia states, albeit in a footnote, that "[t]he Office of the General

Counsel for the Metropolitan Police Department informed undersigned counsel that no arrest

report concerning the events alleged in the Complaint could be located." District of Columbia's

Reply at 7, n.1.

Without specific references to the alleged misconduct of the officers – or even any

references to the presence and involvement of the officers in the first instance – none of these

police reports put the District of Columbia on notice of a negligence claim against it. *See Doe by*

*Fein v. District of Columbia*, 697 A.2d 23, 27 (D.C. 1997) ("A notice is sufficient if it recites

facts from which it could be reasonably anticipated that a claim against the District might arise.

Such notice would suffice, therefore, if it ... described the injuring event with sufficient detail to reveal, in itself, a basis for the District's potential liability.") (citations and quotations marks omitted)). While the reports conveyed "time" and "place" of injury, as well as the role of the third-party assailants in the altercation, the reports did not convey the "cause and circumstances of the injury or damage which is the basis for the claim." *Allen*, 100 A.3d at 67. Assessing the police reports would not have allowed the District of Columbia to forecast that it would be the target of a negligence suit.

Similarly, Plaintiff's allegation that he made a written complaint regarding the Officer Defendants is not sufficient to show that the District of Columbia was on notice of the possibility of this action. Plaintiff alleges that he made a written complaint to the Metropolitan Police Department, "pointing out the substandard conduct of Defendants Spady and Curry and their violations of his constitutional rights." Am. Compl. ¶ 16. However, he does not provide any further details regarding this complaint; he does not indicate the date he submitted it or to whom he submitted it, whether in person, by mail, or otherwise. Therefore, this conclusory allegation does not show that Plaintiff provided sufficient notice to the District of Columbia of the basis for this claim as required by section 12-309. In sum, because Plaintiff failed to comply with section 12-309, the Amended Complaint does not state a claim for negligence against the District of Columbia.

Next, because it is not clear that requirements of 12-309 are jurisdictional rather than a non-jurisdictional affirmative defense, *see supra* note 21, the Court addresses, briefly, the District of Columbia's argument that Plaintiff's claim fails because it is barred by the public duty doctrine. Above, the Court applied this doctrine in concluding that the negligence claim against the Officer Defendants must be dismissed. There is no basis for differentiating between the

District of Columbia and the Officer Defendants in the application of this doctrine. *Cf. Allen v. District of Columbia*, 100 A.3d at 67 ("The public duty doctrine 'operates to shield the District and its employees from liability arising out of their actions in the course of providing public services.' ") (citation omitted). Therefore, for precisely the same reasons that the Court concludes that the public duty doctrine prevents the Amended Complaint from stating a claim in negligence against the Officer Defendants, the public duty doctrine also prevents the Amended Complaint from stating a claim in negligence against the District of Columbia.

In sum, both because Plaintiff did not provide adequate notice of the negligence claim to the District of Columbia pursuant to section 12-309 and because the public duty doctrine bars negligence liability based on the facts alleged in the Amended Complaint, the Amended Complaint fails to state a claim upon which relief may be granted. The Court need not address the District of Columbia's argument that the Amended Complaint relies on intentional acts and, therefore, cannot state a negligence claim. Accordingly, the Court dismisses the negligence claim against the District of Columbia.

## V. CONCLUSION

For the foregoing reasons, the District of Columbia's [4] Motion to Dismiss is GRANTED, the Officer Defendants' [13] Motion to Dismiss is GRANTED, and [28] YFE's Motion to Dismiss is GRANTED. All claims against these defendants are DISMISSED because the Court concludes that the Amended Complaint fails to state a claim upon which relief may be granted with respect to these defendants. In addition, the Court concludes that the Amended Complaint fails to state a claim upon which relief may be granted with respect to HAK LLC and Inner Circle 1223, LLC, the two ABC Establishment Defendants that have not entered an appearance in this action, for the same reasons that the Court grants YFE's Motion to Dismiss.

32

Therefore, the Court *sua sponte* dismisses the claims against HAK LLC and Inner Circle 1223, LLC, as well. Accordingly, this case is DISMISSED in its entirety. An appropriate Order accompanies this Memorandum Opinion.

Dated: January 5, 2015

                                            /s/
                                    COLLEEN KOLLAR-KOTELLY
                                    United States District Judge